# In the United States Court of Federal Claims

BID PROTEST
No. 18-1751C
Filed Under Seal: July 1, 2019
Reissued: July 10, 2019[*]

| | |
|---|---|
| VETERAN TECHNOLOGY INTEGRATORS, LLC, ) ) ) | |
| Plaintiff, ) ) | Post-Award Bid Protest; Judgment Upon the Administrative Record; RCFC 52.1; |
| v. ) ) | Injunctive Relief; Standing; Waiver; Subject-Matter Jurisdiction; RCFC |
| THE UNITED STATES, ) ) | 12(b)(1). |
| Defendant. ) ) | |

*Theodore P. Watson*, Counsel of Record, Watson & Associates, LLC, Aurora, CO; *Wojciech Z. Kornacki*, Watson & Associates, LLC, Of Counsel, for plaintiff.

*Robert C. Bigler*, Trial Attorney, *Deborah A. Bynum*, Assistant Director, *Robert E. Kirschman, Jr.*, Director, *Joseph H. Hunt*, Assistant Attorney General, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC; *Edward Weber*, Of Counsel, United States Department of Commerce, for defendant.

## MEMORANDUM OPINION AND ORDER

GRIGGSBY, Judge

## I.   INTRODUCTION

Plaintiff, Veteran Technology Integrators, LLC ("VTI"), brings this post-award bid protest action challenging the United States Department of Commerce's (the "Commerce Department") decision to reject its proposal in response to a solicitation for cyber security unity support services as non-conforming to the solicitation's requirements and to award a blanket

---

[*] This Memorandum Opinion and Order was originally filed under seal on July 1, 2019 (docket entry no. 23). The parties were given an opportunity to advise the Court of their views with respect to what information, if any, should be redacted from the Memorandum Opinion and Order. The parties filed a joint status report on July 9, 2019 (docket entry no. 25) indicating that no redactions are necessary. And so, the Court is reissuing its Memorandum Opinion and Order, dated July 1, 2019 as the public opinion.

purchase agreement for these services to Goldbelt Hawk, LLC.  The government has moved to dismiss this matter for lack of subject-matter jurisdiction, pursuant to RCFC 12(b)(1).  *See generally* Def. Mot.  The parties have also filed cross-motions for judgment upon the administrative record, pursuant to RCFC 52.1.  *See generally* Pl. Mot.; Def. Mot.

For the reasons discussed below, the Court:  (1) **GRANTS** the government's motion to dismiss; (2) **DENIES-AS-MOOT** the parties' cross-motions for judgment upon the administrative record; and (3) **DISMISSES** the complaint.

## II.     FACTUAL AND PROCEDURAL BACKGROUND[1]

### A.     Factual Background

In this post-award bid protest matter, VTI challenges the Commerce Department's decision to reject its proposal as non-conforming and to award a blanket purchase agreement to provide cyber security unity support services to Goldbelt Hawk, LLC (the "Cybersecurity Contract").  Compl. at ¶ 1; *see also* AR Tab 19 at 718.  Specifically, VTI alleges that the Commerce Department incorrectly determined that VTI was noncompliant with the mandatory requirements of the solicitation for the Cybersecurity Contract and that the agency's contracting officer wrongfully excluded VTI from consideration for award.  Compl. at ¶ 1.  As relief, VTI requests that the Court:  (1) declare that the Commerce Department violated the Competition in Contracting Act ("CICA") and misapplied the rules of mentors and protégés under the Small Business Administration ("SBA") All-Small Mentor Protégé Program; (2) direct the agency to evaluate VTI's proposal; and (3) award VTI costs, including reasonable attorneys' fees.  *Id.* at Prayer for Relief.

#### 1.  The Solicitation

As background, VTI is a joint venture pursuant to the SBA's All-Small Mentor Protégé Program between Mainstay Information Solutions, LLC (the protégé) and Technatomy Corporation (the mentor).  Compl. at ¶ 2.

---

[1] The facts recited in this Memorandum Opinion and Order are taken from the administrative record ("AR"); plaintiff's complaint ("Compl."); plaintiff's motion for judgment upon the administrative record ("Pl. Mot."); and the government's motion to dismiss and cross-motion for judgment upon the administrative record ("Def. Mot.").  Except where otherwise noted, all facts recited herein are undisputed.

On April 5, 2018, the Commerce Department issued Solicitation No. SS1301-18-RP-0005 (the "Solicitation") seeking proposals to provide critical Department-wide cyber security unity support services from a small-business set aside. AR Tab 8 at 88-174. The Solicitation was for the award of a single blanket purchase agreement ("BPA"), with a five-year ordering period. AR Tab 8 at 91; AR Tab 9 at 181. The task orders issued pursuant to the BPA, would be fixed-price services and/or supply task orders. AR Tab 8 at 108.

Of particular relevance here, Section 1.4 of the Solicitation requires that all offerors hold a General Services Administration ("GSA") Federal Supply Schedule 70 Contract ("FSS 70 Contract"). AR Tab 9 at 181. In this regard, the Solicitation provides that "[i]n order to be eligible for award an offeror must hold a [GSA] FSS 70 contract with SIN 132-51." *Id.*

In addition, Section 1.3 of the Solicitation requires that a prospective bidder hold its own top secret facility clearance ("TS-FCL"). *Id.* In this regard, the Solicitation provides that:

> Fulfillment of this requirement will require the prime contractor to have and maintain a Top Secret Facility Clearance (TS-FCL) with eligibility for access to Sensitive Compartmented Information (SCI). The Facility Clearance must be possessed and be current at the time of proposal submission. Any proposal that is submitted by a contractor that does not hold a TS-FCL will not be considered for award.

*Id.*

With regards to the evaluation of responsive proposals, the Solicitation also provides that the Commerce Department will consider three evaluation factors: (1) Technical; (2) Past Performance; and (3) Price. AR Tab 8 at 102. The Solicitation further provides that the agency will make an award decision based upon the best value to the government. *Id.* Lastly, the Solicitation provides that the Technical factor is more important than the Past Performance factor and that these two non-price factors, when combined, are approximately equal to Price. *Id.*

On May 10, 2018—prior to the deadline to submit responsive proposals—the SBA informed VTI that it was not eligible for award of the Cybersecurity Contract because VTI did not hold a FSS 70 Contract. AR Tab 30 at 865; *see also* AR Tab 9 at 336 (stating that the deadline to submit proposals was May 14, 2018). Specifically, the SBA informed VTI that:

>   [A Joint Venture] JV must have an IT 70 Schedule.  GSA policy does not transfer
>   the JV partners Schedule to the JV.  Based on that, your JV would not be eligible
>   to compete on this set-aside.

AR Tab 30 at 865.  On May 11, 2018, VTI timely submitted its proposal.  *See generally* AR Tab 13.

### 2. Evaluation Of Proposals And Award

During the evaluation of proposals for the Cybersecurity Contract, the contracting officer determined that four proposals, including VTI's proposal, did not comply with the Solicitation's mandatory requirements.  AR Tab 17 at 637-38.  And so, the contracting officer eliminated VTI's proposal from further consideration.  *Id.* at 638.

After conducting an evaluation of the remaining responsive proposals, the agency performed a best value analysis and determined that Goldbelt Hawk, LLC provided the best value to the government.  AR Tab 19 at 718.  And so, the Commerce Department awarded the Cybersecurity Contract to Goldbelt Hawk, LLC on August 20, 2018.  *Id.*; *see generally* AR Tab 20.

### 3. VTI's Debriefing

Thereafter, the Commerce Department notified VTI that its proposal was not evaluated due to noncompliance with the Solicitation's mandatory requirements.  AR Tab 25 at 852-54.  In this notice, the agency advised that "[t]he compliance review performed for VTI's proposal did not locate any information verifying that VTI holds a FSS 70 contract."  *Id.* at 854.  The agency also advised that:

>   The compliance review also did not locate any information verifying that VTI
>   holds a TS-FCL notwithstanding the TS-FCL clearances held by Mainstay
>   Information Solutions, LLC and Technatomy Corporation.  Although Mainstay
>   and Technatomy appear to hold the required clearances, the proposal is not
>   submitted by either of these companies in their capacity as a prime.

*Id.*  And so, the agency concluded that, "[d]ue to the fact that . . . VTI did not meet the mandatory requirement of holding a FSS 70 contract and a TS-FCL the proposal it submitted was not evaluated per the terms of the solicitation."  *Id.*

### B. Procedural History

On November 13, 2018, VTI filed the complaint in this bid protest matter. *See generally* Compl. On December 4, 2018, the government filed the administrative record. *See generally* AR.

On January 3, 2019, VTI filed a motion for judgment upon the administrative record. *See generally* Pl. Mot. On March 13, 2019, the government filed a motion to dismiss this matter for lack of subject-matter jurisdiction, or in the alternative, a cross-motion for judgment upon the administrative record. *See generally* Def. Mot.

On March 27, 2019, VTI filed a response and opposition to the government's motion to dismiss and cross-motion for judgment upon the administrative record. *See generally* Pl. Resp. On April 10, 2019, the government filed a reply in support of its motion to dismiss and cross-motion for judgment upon the administrative record. *See generally* Def. Reply.

These matters having been fully briefed, the Court resolves the pending motions.

## III. LEGAL STANDARDS

### A. Bid Protest Jurisdiction And Standing

The Tucker Act grants the United States Court of Federal Claims jurisdiction over bid protests brought by "an interested party objecting to a solicitation by a Federal agency for bids or proposals for a proposed contract or to a proposed award or the award of a contract or any alleged violation of statute or regulation in connection with a procurement or a proposed procurement." 28 U.S.C. § 1491(b)(1). In bid protest cases, this Court reviews agency actions under the Administrative Procedure Act's ("APA") "arbitrary and capricious" standard. *See* 28 U.S.C. § 1491(b)(4) (adopting the standard of review set forth in the APA). Under this standard, an "'award may be set aside if either (1) the procurement official's decision lacked a rational basis; or (2) the procurement procedure involved a violation of regulation or procedure.'" *Banknote Corp. of Am., Inc. v. United States*, 365 F.3d 1345, 1351 (Fed. Cir. 2004) (quoting *Impresa Construzioni Geom. Domenico Garufi v. United States*, 238 F.3d 1324, 1332 (Fed. Cir. 2001)).

In this regard, the United States Court of Appeals for the Federal Circuit has explained that when a challenge is brought on the first ground the test is "whether 'the contracting agency

provided a coherent and reasonable explanation of its exercise of discretion, and the disappointed bidder bears a "heavy burden" of showing that the award decision had no rational basis.'" *Id.* (quoting *Impresa,* 238 F.3d at 1332-33) (citation omitted). "When a challenge is brought on the second ground, the disappointed bidder must show 'a clear and prejudicial violation of applicable statutes or regulations.'" *Id.* (quoting *Impresa,* 238 F.3d at 1333) (internal quotations omitted). In addition, when reviewing an agency's procurement decision, the Court should recognize that the agency's decision is entitled to a "presumption of regularity." *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 415 (1971), *overruled on other grounds by Califano v. Sanders*, 430 U.S. 99 (1977). "The [C]ourt should not substitute its judgment for that of a procuring agency . . . ." *Cincom Sys., Inc. v. United States*, 37 Fed. Cl. 663, 672 (1997). And so, "[t]he protestor must show, by a preponderance of the evidence, that the agency's actions were either without a reasonable basis or in violation of applicable procurement law." *Info. Tech. & Applications Corp. v. United States*, 51 Fed. Cl. 340, 346 (2001), *aff'd*, 316 F.3d 1312 (Fed. Cir. 2003) (citation omitted).

The Court's standard of review "is highly deferential." *Advanced Data Concepts, Inc. v. United States*, 216 F.3d 1054, 1058 (Fed. Cir. 2000). As long as there is "'a reasonable basis for the agency's action, the court should stay its hand even though it might, as an original proposition, have reached a different conclusion.'" *Honeywell, Inc. v. United States*, 870 F.2d 644, 648 (Fed. Cir. 1989) (quoting *M. Steinthal & Co. v. Seamans*, 455 F.2d 1289, 1301 (D.C. Cir. 1971)). But, if "the agency 'entirely fail[s] to consider an important aspect of the problem [or] offer[s] an explanation for its decision that runs counter to the evidence before the agency,'" then the resulting action lacks a rational basis and, therefore, is defined as "arbitrary and capricious." *Ala. Aircraft Indus., Inc.-Birmingham v. United States*, 586 F.3d 1372, 1375 (Fed. Cir. 2009) (quoting *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983)).

Standing is a threshold issue which implicates the Court's subject-matter jurisdiction. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992). And so, if a plaintiff cannot establish standing, the Court is without jurisdiction to render a decision on the merits of a claim. *See Myers Investigative & Sec. Servs. v. United States*, 275 F.3d 1366, 1369–70 (Fed. Cir. 2002).

When evaluating who qualifies as an interested party with standing to bring a bid protest claim, the Court looks to the definition of "interested party" provided in the Competition in Contracting Act ("CICA"). *Myers*, 275 F.3d at 1370 (quoting *Am. Fed'n of Gov't Emps. v. United States*, 258 F.3d 1294, 1302 (Fed. Cir. 2001)); *see* 31 U.S.C. § 3551(2). And so, to have standing a plaintiff must show that: "'it [(1)] is . . . an actual or prospective bidder and [(2)] . . . has a direct economic interest' in the procurement or proposed procurement." *Diaz v. United States*, 853 F.3d 1355, 1358 (Fed. Cir. 2017) (alterations in original) (quoting *Digitalis Educ. Sols., Inc. v. United States*, 664 F.3d 1380, 1384 (Fed. Cir. 2012)); *see also* 31 U.S.C. § 3551(2).

In determining the second prong of standing—whether a plaintiff has a "direct economic interest" in the procurement—the Court generally applies the "substantial chance test," and inquires as to whether the plaintiff would have had a substantial chance of being awarded the contract, but for the alleged error in the procurement.[2] *Orion Tech., Inc. v. United States*, 704 F.3d 1344, 1348 (Fed. Cir. 2013). And so, while a plaintiff need not show that it would have received the award in a competition, a plaintiff must show that it would have been a qualified bidder or offeror to establish standing. *Myers*, 275 F.3d at 1370–71.

## B.   RCFC 12(b)(1)

When deciding a motion to dismiss upon the ground that the Court does not possess subject-matter jurisdiction pursuant to RCFC 12(b)(1), this Court must assume that all factual allegations in the complaint are true and must draw all reasonable inferences in the non-movant's favor. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007); RCFC 12(b)(1). But, a plaintiff bears the burden of establishing subject-matter jurisdiction, and it must do so by a preponderance of the evidence. *See Reynolds v. Army & Air Force Exch. Servs.*, 846 F.2d 746, 748 (Fed. Cir. 1988). Should the

---

[2] The Federal Circuit has held that in certain pre-award bid protest matters involving a challenge to the terms of a solicitation, the Court may apply a different test to determine direct economic interest, namely, whether a plaintiff has a "non-trivial competitive injury which can be addressed by judicial relief." *Weeks Marine, Inc. v. United States*, 575 F.3d 1352, 1362 (Fed. Cir. 2009). This standard may apply when circumstances provide insufficient facts to determine whether a plaintiff had a substantial chance of an award. *Id.* at 1361. But, as the Federal Circuit recognized in *Orion Tech., Inc. v. United States*, the "non-trivial competitive injury" test applies when there is a challenge to a solicitation before the award. 704 F.3d 1344, 1348–49 (Fed. Cir. 2013). And so, this test does not necessarily apply to all pre-award bid protests. *Id.*

Court determine that "it lacks jurisdiction over the subject matter, it must dismiss the claim." *Matthews v. United States*, 72 Fed. Cl. 274, 278 (2006); *see* RCFC 12(h)(3).

### C. Judgment Upon The Administrative Record

Generally, RCFC 52.1 limits this Court's review of an agency's procurement decision to the administrative record. RCFC 52.1; *see Axiom Res. Mgmt., Inc. v. United States*, 564 F.3d 1374, 1379 (Fed. Cir. 2009) ("'[T]he focal point for judicial review should be the administrative record already in existence.'") (quoting *Camp v. Pitts*, 411 U.S. 138, 142 (1973)). And so, unlike a summary judgment motion brought pursuant to RCFC 56, "the existence of genuine issues of material fact does not preclude judgment on the administrative record" under RCFC 52.1. *Tech. Sys., Inc. v. United States*, 98 Fed. Cl. 228, 242 (2011) (citations omitted); RCFC 52.1. Rather, the Court's inquiry is whether, "given all the disputed and undisputed facts, a party has met its burden of proof based on the evidence in the record." *A & D Fire Prot., Inc. v. United States*, 72 Fed. Cl. 126, 131 (2006).

### D. Injunctive Relief

Lastly, under its bid protest jurisdiction, the Court "may award any relief [it] considers proper, including declaratory and injunctive relief." 28 U.S.C. § 1491(b)(2); *see also Centech Grp., Inc. v. United States*, 554 F.3d 1029, 1037 (Fed. Cir. 2009). In deciding whether to issue a permanent injunction, the Court "considers: (1) whether . . . the plaintiff has succeeded on the merits of the case; (2) whether the plaintiff will suffer irreparable harm if the court withholds injunctive relief; (3) whether the balance of hardships to the respective parties favors the grant of injunctive relief; and (4) whether it is in the public interest to grant injunctive relief." *PGBA, LLC v. United States*, 389 F.3d 1219, 1228-29 (Fed. Cir. 2004) (citing *Amoco Prod. Co. v. Vill. of Gambell, Alaska*, 480 U.S. 531, 546 n.12 (1987) ("The standard for a preliminary injunction is essentially the same as for a permanent injunction with the exception that the plaintiff must show a likelihood of success on the merits rather than actual success.")); *see also Centech Grp., Inc.*, 554 F.3d at 1037. In this regard, the United States Court of Appeals for the Federal Circuit has held that:

> No one factor, taken individually, is necessarily dispositive. If a preliminary injunction is granted by the trial court, the weakness of the showing regarding one factor may be overborne by the strength of the others. If the injunction is denied,

> the absence of an adequate showing with regard to any one factor may be sufficient, given the weight or lack of it assigned the other factors, to justify the denial.

*FMC Corp. v. United States*, 3 F.3d 424, 427 (Fed. Cir. 1993) (citations omitted).

A plaintiff who cannot demonstrate actual success upon the merits cannot prevail upon a motion for preliminary injunctive relief. *Cf. Nat'l Steel Car, Ltd. v. Canadian Pacific Ry., Ltd.*, 357 F.3d 1319, 1324–25 (Fed. Cir. 2004) (finding that a plaintiff who cannot demonstrate likely success upon the merits cannot prevail upon its motion for preliminary injunctive relief). This Court has also found success upon the merits to be "the most important factor for a court to consider when deciding whether to issue injunctive relief." *Dellew Corp. v. United States*, 108 Fed. Cl. 357, 369 (2012) (citing *Blue & Gold Fleet, L.P. v. United States*, 492 F.3d 1308, 1312 (Fed. Cir. 2007)). But, while success upon the merits is necessary, it is not sufficient alone for a plaintiff to establish that it is entitled to injunctive relief. *See Contracting, Consulting, Eng'g LLC v. United States*, 104 Fed. Cl. 334, 353 (2012) ("Although plaintiff's entitlement to injunctive relief depends on its succeeding on the merits, it is not determinative because the three equitable factors must be considered, as well." (citations omitted)).

### III.  LEGAL ANALYSIS

The government has moved to dismiss this matter upon the grounds that VTI has waived its right to challenge the Solicitation's requirement that offerors hold a FSS 70 Contract. Def. Mot. at 10-12. The government also argues that VTI lacks standing to bring this post-award bid protest matter because it did not hold a FSS 70 Contract, or the required top secret facility clearance, at the time of its offer. *Id.* at 12-18. And so, the government requests that the Court dismiss this matter for lack of subject-matter jurisdiction. *Id.* at 1.

VTI counters in its response and opposition to the government's motion to dismiss that it has not waived its claims, because VTI diligently pursued its interests after submitting an offer and the contracting officer reconsidered the decision to exclude VTI's proposal from consideration for award of the Cybersecurity Contract. Pl. Resp. at 9-11. VTI also argues that it has standing to bring this protest because it satisfied the Solicitation's mandatory requirements through its mentor protégé relationship with Mainstay Information Solutions, LLC and Technatomy Corporation. *Id.* at 16-18. And so, VTI requests that the Court deny the government's motion to dismiss. *Id.* at 42.

The parties have also filed cross-motions for judgment upon the administrative record on the issues of whether the Commerce Department:  (1) rationally eliminated VTI from the competition; (2) adequately documented the source selection decision; and (3) violated the Competition in Contracting Act ("CICA").  Pl. Mot. at 27-56; Def. Mot. at 18-23.  In its motion for judgment upon the administrative record, VTI argues that the Commerce Department's contracting officer improperly applied the legal standard under the SBA regulations governing joint venture agreements in deciding to exclude VTI's proposal from consideration.  Pl. Mot. at 27-39.  VTI also argues that the administrative record does not rationally explain the contracting officer's decision to exclude its proposal.  *Id.* at 48-51.  Lastly, VTI argues that the contracting officer's decision to not evaluate its proposal violates the Competition in Contracting Act.  *Id.* at 56-57.  And so, VTI requests that the Court set aside the Commerce Department's decisions to exclude VTI from consideration for award of the Cybersecurity Contract and to award that contract to Goldbelt Hawk, LLC.  *Id.* at 5, 58.

The government counters in its cross-motion for judgment upon the administrative record that the Commerce Department reasonably decided to eliminate VTI's proposal from the competition, and that the agency adequately documented this decision.  *Id.* at 18-23.  And so, the government requests that the Court sustain the Commerce Department's decisions to exclude VTI from consideration for award of the Cybersecurity Contract and to award that contract to Goldbelt Hawk, LLC.  *Id.* at 2.

For the reasons set forth below, the record evidence makes clear that the Court does not possess subject-matter jurisdiction to consider VTI's protest, because VTI has waived its claim challenging the Solicitation's requirement that offerors hold a FSS 70 Contract and VTI lacks standing to pursue this matter.  And so, the Court:  (1) **GRANTS** the government's motion to dismiss; (2) **DENIES-AS-MOOT** the parties' cross-motions for judgment upon the administrative record; and (3) **DISMISSES** the complaint.

### A.  VTI's Challenge To The Solicitation's Mandatory Requirement Is Untimely

As an initial matter, the government persuasively argues that VTI has waived its right to challenge the Solicitation's mandatory requirement that offerors hold a FSS 70 Contract, because VTI failed to raise any objection to this requirement prior to submitting its offer.  This Court has long recognized that an offeror wishing to challenge the terms of a solicitation must do so before

offers are due.  *Blue & Gold Fleet, L.P. v. United States*, 492 F.3d 1308, 1313 (Fed. Cir. 2007) (holding that a protestor who knew the agency's interpretation of a solicitation but failed to challenge it before bids were due, waived its ability to object afterwards).  And so, VTI may not challenge the Solicitation's requirement regarding the FSS 70 Contract, if VTI failed to raise concerns about this requirement prior to the submission of responsive proposals.  *Id.*

A review of the administrative record shows that VTI has waived this claim.  First, it is undisputed that Section 1.4 of the Solicitation provides that "to be eligible for award an offeror must hold a FSS 70 contract."  AR Tab 9 at 181.  It is also undisputed that VTI did not hold its own FSS 70 Contract at the time that it submitted a proposal in response to the Solicitation.  Pl. Resp. at 17.  And so, there is no genuine dispute that VTI did not satisfy the Solicitation's mandatory requirement in this regard.

It is similarly undisputed that VTI was aware that it was ineligible to compete for the award of the Cybersecurity Contract for this reason prior to submitting an offer.  AR Tab 30 at 865.  In this regard, the administrative record shows that, on May 10, 2018—four days before the deadline to submit responsive proposals—the SBA informed VTI that its joint venture would not be eligible to compete for the award of the Cybersecurity Contract because GSA's policy does not transfer a joint venture partner's FSS 70 Contract to the joint venture.  *Id.*; *see also* AR Tab 9 at 336 (stating that the deadline to submit proposals was May 14, 2018).  Given this undisputed evidence, VTI could have—and should have—raised any concerns about the application of the Solicitation's mandatory requirement that offerors hold a FSS 70 Contract to its joint venture with the Commerce Department prior to submitting an offer.  Because VTI failed to do so, the Court agrees with the government that VTI has waived this claim.  *Blue & Gold Fleet*, 492 F.3d at 1313 (citing *Stratos Mobile Networks USA, LLC v. United States*, 213 F.3d 1375, 1381 (Fed. Cir. 2000)).

VTI's argument that it was unaware that it was ineligible to compete for the Cybersecurity Contract prior to the award of this contract is also unsupported by the record evidence.  Pl. Resp. at 14-16.  As discussed above, the administrative record makes clear that VTI became aware that it was ineligible to compete for the Cybersecurity Contract four days before responsive proposals were due.  AR Tab 30 at 865; *see also* AR Tab 11 at 365.

VTI's argument that this claim is timely because it was "triggered" by the contracting officer's August 22, 2018, letter informing VTI of the decision to exclude its proposal is also belied by the record evidence. Pl. Resp. at 9-10; *see also* AR Tab 25 at 852-54. VTI correctly observes that it continued to communicate with the Commerce Department's contracting officer about the decision to exclude its proposal after the date of this letter. Pl. Resp. at 9-11; *see also* AR Tabs 26-29. But, VTI simply fails to explain why it did not raise any concerns about the Solicitation's mandatory requirement that offerors hold a FSS 70 Contract prior to submitting an offer. *See* Pl. Resp. at 9-16. And so, the Court must dismiss this claim for lack of subject-matter jurisdiction. RCFC 12(b)(1).[3]

### B. VTI Lacks Standing To Bring This Bid Protest

The administrative record also makes clear that VTI lacks standing to pursue this bid protest matter because it is not an interested party. To have standing, VTI must show that: "'it [(1)] is . . . an actual or prospective bidder and [(2)] . . . has a direct economic interest' in the procurement or proposed procurement." *Diaz v. United States*, 853 F.3d 1355, 1358 (Fed. Cir. 2017) (alterations in original) (quoting *Digitalis Educ. Sols., Inc. v. United States*, 664 F.3d 1380, 1384 (Fed. Cir. 2012)); *see also* 31 U.S.C. § 3551(2). In determining whether VTI has a "direct economic interest," the Court generally applies the "substantial chance test" and inquires as to whether VTI would have had a substantial chance of being awarded the contract, but for the alleged error in the procurement. *Orion Tech., Inc. v. United States*, 704 F.3d 1344, 1348 (Fed. Cir. 2013).

VTI has not met its burden to show that it is an interested party with standing to bring this bid protest case for two reasons.

### 1. VTI Is Not An Interested Party Because It Did Not Possess A FSS 70 Contract When Responsive Proposals Were Due

First, as discussed above, a careful review of the administrative record makes clear that VTI is not an interested party because it did not hold a FSS 70 Contract when responsive

---

[3] VTI's argument that it does not challenge the terms of the Solicitation in this case is also unpersuasive. Pl. Resp. at 9-12. A review of VTI's cross-motion for judgment upon the administrative record makes clear that VTI challenges how the Solicitation's requirement that offerors hold a FSS 70 Contract should apply to its joint venture. Pl. Mot. at 27-48. And so, the Court reads VTI's claim as a challenge to the terms of the Solicitation.

12

proposals were due, as required by the Solicitation. Section 1.4 of the Solicitation makes clear that to be eligible for award, VTI must hold a FSS 70 Contract and it is undisputed that VTI did not hold such a contract at the time that it submitted an offer in response to the Solicitation.[4] AR Tab 9 at 181; Pl. Resp. at 17. Given this, VTI has not shown that it could compete for the Cybersecurity Contract. *Orion Tech.*, 704 F.3d at 1348; *see also Weeks Marine, Inc. v. United States*, 575 F.3d 1352, 1362 (Fed. Cir. 2009).

The Court is also unpersuaded by VTI's argument that it has standing to bring this case because joint ventures are not required to form a separate legal entity under the applicable SBA regulations. Pl. Resp. at 16-19; *see also* 13 C.F.R. §§ 121.103, 125.8, and 125.9. In this regard, the SBA regulation that VTI relies upon provides that "a joint venture . . . may be in the form of a formal or informal partnership or exist as a separate limited liability company or other separate legal entity" to qualify as a small business. 13 C.F.R. § 121.103(h). But, this regulation does not address the requirement for offerors to hold a FSS 70 Contract, or how such a requirement would apply to the Solicitation at issue in this bid protest dispute. *Id*.

VTI also argues without persuasion that it may satisfy the requirement to hold a FSS 70 Contract through the partners in its joint venture. Pl. Resp. at 16-19. But, it is without dispute that VTI—rather than its joint venture partners—was the offeror in connection with the Solicitation for the Cybersecurity Contract. *See generally* AR Tab 13 (showing that the proposal was submitted by VTI); *see also* AR Tab 25 at 854. And so, while the partners in VTI's joint venture may have independently held a FSS 70 Contract, VTI did not, and this fact precludes VTI from competing for the Cybersecurity Contract. AR Tab 25 at 854; Pl. Resp. at 17; *Arkray USA, Inc. v. United States*, 118 Fed. Cl. 129, 134 (2014).[5]

---

[4] The Solicitation was issued pursuant to FAR Part 8 on the GSA Federal Supply Schedule. AR Tab 9 at 181, 194; Def. Mot. at 13.

[5] VTI's argument that it has standing because a senior GSA contracting officer determined that VTI could compete for the award of the Cybersecurity Contract is equally unavailing because this determination does not circumvent the requirement in the Solicitation that the offeror hold its own FSS 70 Contract. Pl. Resp. at 32. VTI also improperly relies upon *RAMCOR Services Group, Inc. v. United States*, 185 F.3d 1286 (Fed. Cir. 1991) to show that it has standing. Pl. Resp. at 22-24. In that case, the Federal Circuit held that "[a]s long as a statute [or regulation] has a connection to a procurement proposal, an alleged violation suffices to supply jurisdiction." *RAMCOR*, 185 F.3d at 1289. But, *RAMCOR* does not establish that VTI has standing to pursue this bid protest given the evidence in the record showing that VTI was ineligible to compete for the Cybersecurity Contract. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–

### 2. VTI Is Not An Interested Party Because It Did Not Possess A Top Secret Facility Clearance

The administrative record also makes clear that VTI is not an interested party because it did not possess the security clearance required under the Solicitation at the time that proposals were due. In this regard, Section 1.3 of the Solicitation provides that:

> Fulfillment of this requirement will require the prime contractor to have and maintain a Top Secret Facility Clearance (TS-FCL) . . . . Any proposal submitted that is submitted by a contractor that does not hold a TS-FCL will not be considered for award.

AR Tab 9 at 181. VTI acknowledges that that it did not hold a top secret facility clearance prior to the closing date for the receipt of responsive proposals. Pl. Resp. at 17. Given this, there can be no genuine dispute that VTI did not, and cannot, satisfy the Solicitation's mandatory requirement that the prime contractor "have and maintain a Top Secret Facility Clearance." AR Tab 9 at 181. And so, again, the record evidence makes clear that VTI lacks standing because it is not eligible to compete for the Cybersecurity Contract.

VTI's argument that it has standing because VTI could rely upon the facility clearance held by the members of its joint venture is also misguided. Pl. Resp. at. 18. As discussed above, the administrative record makes clear that the Solicitation requires that the prime contractor hold the required facility clearance. AR Tab 9 at 181. The administrative record also makes clear that VTI was the prime contractor in connection with the Cybersecurity Contract. *See generally* AR Tab 13 (showing that the proposal was submitted by VTI); *see also* AR Tab 25 at 854; Pl. Resp. at 17. And so, VTI simply has not shown that it was eligible to compete for award of this contract.

Because the Court concludes that VTI has waived its right to challenge the Solicitation's mandatory requirement that offerors hold a FSS 70 Contract and that VTI has not established that it has standing to bring this bid protest action, the Court must dismiss this action. For these same reasons, the Court does not reach the merits of the arguments set forth in the parties' cross-motions for judgment upon the administrative record.

---

61 (1992) (holding that standing is a threshold issue which implicates the Court's subject-matter jurisdiction).

14

### C. VTI Is Not Entitled To Injunctive Relief

As a final matter, VTI has not established that it is entitled to the injunctive relief that it seeks in this matter. VTI requests that the Court "order the Agency to end the award that resulted from this unlawful exclusion" and permanently enjoin further performance under the Cybersecurity Contract. Pl. Mot. at 58; Pl. Resp. at 39, 41. But, as discussed above, VTI has not prevailed upon the merits of any of its claims. And so, the Court must deny VTI's request for injunctive relief. *Argencord Mach. & Equip., Inc. v. United States*, 68 Fed. Cl. 167, 176 (2005) (holding that a plaintiff that has not actually succeeded upon the merits of its claims cannot prevail upon a motion for injunctive relief).

### IV. CONCLUSION

In sum, the record evidence in this case makes clear that VTI has waived its right to challenge the Solicitation's mandatory requirement that offerors hold a FSS 70 Contract and that VTI lacks standing to pursue this bid protest matter. And so, the Court does not possess subject-matter jurisdiction to consider any of VTI's claims.

For the foregoing reasons, the Court:

1. **GRANTS** the government's motion to dismiss;

2. **DENIES-AS-MOOT** the parties' cross-motions for judgment upon the administrative record; and

3. **DISMISSES** the complaint.

The Clerk shall enter Judgment accordingly.

Each party to bear its own costs.

Some of the information contained in this Memorandum Opinion and Order may be considered protected information subject to the Protective Order entered in this matter on November 27, 2018. This Memorandum Opinion and Order shall therefore be filed **UNDER SEAL**. The parties shall review the Memorandum Opinion and Order to determine whether, in their view, any information should be redacted in accordance with the terms of the Protective Order prior to publication. The parties shall **FILE** a joint status report identifying the

information, if any, that they contend should be redacted, together with an explanation of the basis for each proposed redaction on or before **July 26, 2019**.

    **IT IS SO ORDERED.**

                                        s/ Lydia Kay Griggsby
                                        LYDIA KAY GRIGGSBY
                                        Judge